UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
SHEREN JADALLAH,                        :
                                        :
                    Plaintiff,          :
                                        :        **REPORT AND RECOMMENDATION**
        -against-                       :
                                        :        21 Civ. 6390 (DG) (VMS)
 NEW YORK CITY DEPARTMENT OF            :
EDUCATION, DANA PARENTINI,              :
ELIBELK VARGAS,                         :
                                        :
                    Defendants.         :
---------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Sheren Jadallah ("Plaintiff") commenced this pro se action against Dana Parentini

("Ms. Parentini"), Elibelk Vargas ("Ms. Vargas") (together, "Individual Defendants"), and New York

City Department of Education (the "DOE") (altogether, "Defendants") alleging, inter alia,

violations of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title

VII"); (2) the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); (3) 42 U.S.C.

§ 1981 ("Section 1981"); (4) the New York State Human Rights Law, N.Y. Exec. Law § 296

("NYSHRL"); and (5) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101

("NYCHRL").   See Compl., ECF No. 2; Amended Compl., ECF No. 29.  Before the Court is the

DOE's motion to dismiss ("Motion to Dismiss") Plaintiff's amended complaint ("Amended

Complaint") pursuant to Rules 12(b)(5)-(6) of the Federal Rules of Civil Procedure ("FRCP") on

the basis that "(1) Plaintiff failed to timely serve the DOE; (2) Plaintiff failed to file a notice of

claim; (3) Plaintiff's claims are time-barred; (4) Plaintiff fails to state a claim under the

applicable statutes; and (5) Plaintiff is not entitled to tenure by estoppel.  Plaintiff's Amended

Complaint suffers from the same defects as her original complaint."  ECF No. 42 at 1.  The

District Court referred the DOE's Motion to Dismiss to this Court for a report and

recommendation.  For the following reasons, I respectfully recommend that the DOE's Motion to Dismiss be granted, and that the claims against the DOE be dismissed.

## I.    Background

### A.    Factual Background

The following facts are derived from Plaintiff's Amended Complaint and are assumed to be true for the purposes of this motion.  See Amended Compl., ECF No. 29.  On March 22, 2016, Plaintiff began work as a probationary special education teacher with the DOE at P.S. 506 in Sunset Park, Brooklyn.  See id. ¶ 1.  From 2016 through 2019, Plaintiff's overall annual ratings were "Effective" although Plaintiff received a "Developing" rating on Plaintiff's Measures of Teacher Practice evaluation for the 2018-19 school year.  See id. ¶ 2.  Plaintiff self-identifies as "Arab/Muslim" and disabled, due to her depression and anxiety.  Id. ¶¶ 3, 29.

Beginning in the 2018-19 school year, Plaintiff's colleague Ms. Vargas began "harassing" Plaintiff with "negative evaluations, excessive classroom visits" and observing Plaintiff "more frequently compared to other teachers."  Id. ¶¶ 6-7.  Ms. Vargas excluded Plaintiff "from a reward that all other third grade teachers were invited to."  Id. ¶ 9.  Ms. Vargas would yell at Plaintiff or disrespect Plaintiff in front of other teachers, exacerbating Plaintiff's anxiety.  Id. ¶ 11.  After one such occasion, Plaintiff "had a breakdown" and complained to her supervisor, Ms. Parentini, about the way Ms. Vargas treated Plaintiff.  Id.  Individual Defendants were aware of the way their behavior harmed Plaintiff.  Id. ¶ 12.  Ms. Vargas once told Plaintiff that Plaintiff was "too sensitive, get over it."  Id. ¶ 13.

In or around October 2019, Individual Defendants told Plaintiff that Plaintiff "would be most likely granted tenure or an extension of probation."  Id. ¶ 15.  On November 4, 2019, Plaintiff received "an unjustified disciplinary letter" from Ms. Vargas alleging that Plaintiff was "not actively teaching" the students.  Id. ¶ 16.  On November 11, 2019, Plaintiff suffered an

anxiety attack from Ms. Vargas's "continuous harassment," which forced Plaintiff to take an ambulance from the school to the hospital. ECF No. 29 ¶ 17. Ms. Vargas did not send someone to the hospital with Plaintiff in the ambulance, "contrary to normal protocol." Id. Plaintiff received a diagnosis of job "stress-related anxiety" and PTSD. Id. ¶ 19. On November 26, 2019, Plaintiff had another panic attack while being observed by Ms. Parentini. Id. ¶ 20. On January 6, 2020, Plaintiff received "[i]neffective ratings on an observation conducted by Principal Parentini." Id. ¶ 21. On January 17, 2020, Plaintiff received a notice of discontinuance "from the school," effective March 17, 2020. Id. ¶ 22. On January 17, 2020, Karina Costantino, a superintendent at the DOE, addressed a "Denial of Completion of Probation Letter" to Plaintiff denying Plaintiff's certification of completion of her probation period with the DOE. See ECF No. 19-6 at 2. The Costantino letter also stated that Plaintiff's probation period "shall terminate as of the close of business 60 days from the date of this letter or the probation completion date listed above [i.e., March 20, 2020], whichever occurs first." Id. On March 4, 2020, Plaintiff emailed Ms. Parentini to inquire as to why Ms. Parentini decided to discontinue Plaintiff, but Ms. Parentini did not respond. ECF No. 29 ¶ 23. Plaintiff's employment terminated on March 17, 2020. Id. ¶ 22.

Plaintiff was "discontinued when [her overall] ratings were Effective, while an Asian probationary teacher, with poor ratings was granted tenure," id. ¶ 24, and "another non-Arab probationary teacher, who had poor ratings was provided additional support and not discontinued," id. ¶ 25.

After the end of her employment at P.S. 506, from March 23, 2020 to April 15, 2020, Plaintiff worked at a DOE preK recreational center, which Plaintiff believes qualifies her for tenure by estoppel. Id. ¶ 26. Plaintiff has been unable to find regular employment within the DOE since her employment was discontinued from P.S. 506. Id. ¶ 27. On or about September

30, 2020, Plaintiff was "nominated for a position at PS 1 in Brooklyn for an elementary school teaching position, but was . . . flagged on or about October 1, 2020, and the nomination did not go through." Id. ¶ 27.

### B. Procedural Background

On January 26, 2021, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("Division") alleging violations of the Title VII, the ADA, the NYSHRL and the NYSCHRL. See ECF No. 19-7 at 2. On that same day, Plaintiff filed an administrative charge of federal discrimination against Defendants with the U.S. Equal Employment Opportunity Commission employment ("EEOC"). See ECF No. 2 at 6; ECF Nos. 42 at 11 & 46 at 8.

On March 19, 2021, Corporation Counsel, as attorneys for the DOE, addressed a letter to the Regional Director of the Division recommending that the Division "dismiss the complaint in its entirety, or, in the alternative issue a finding of no probable cause." ECF No. 19-3 at 2. Corporation Counsel's letter claimed that Plaintiff's claims were time-barred because "she received notice that her completion of probation had been denied on January 17, 2020. Given that the one-year period began running on the date of her notice rather than her discharge, the entire complaint is untimely and should be dismissed." Id. On May 7, 2021, the Division issued a letter dismissing the verified complaint "on the ground of administrative convenience" because Plaintiff "intends to pursue federal remedies in courts, in which forum all the issues concerning the question of discrimination charged can be resolved." ECF No. 19-7 at 2. On July 6, 2021, in response to her EEOC charge, Plaintiff received a Notice of Right to Sue ("Notice of Right") dated June 28, 2021. See ECF No. 2 at 6. On October 1, 2021, Plaintiff filed her first complaint ("Complaint") against Defendants in the Southern District of New York ("S.D.N.Y."). See ECF No. 2. On that same date, Plaintiff filed an application to proceed in forma pauperis ("IFP"). Id.

4

On October 5, 2021, the District Court in S.D.N.Y. issued an Order whereby Plaintiff "must either pay the $402 in fees that are required to file a civil action in this court or submit an amended IFP application." ECF No. 3. On November 4, 2021, Plaintiff filed an amended IFP application. See ECF No. 4. The District Court in S.D.N.Y. granted Plaintiff's IFP application. See ECF No. 5. On November 17, 2021, this matter was transferred from the District Court in S.D.N.Y. to this Court. See ECF No. 7.

On December 2, 2021, this Court issued an Order for the Clerk of Court to prepare a summons for each Defendant and for the U.S. Marshals Service to serve a summons, the Complaint and the Order upon each Defendant. See ECF No. 9. On January 24, 2022, the summons was issued as to Individual Defendants at P.S. 506 and as to the DOE at 65 Court Street, Brooklyn, NY 11201. See ECF No. 10. Individual Defendants were served with the Complaint on February 16, 2022. See ECF Nos. 12-13. On March 1, 2022, the summons was returned unexecuted as to the DOE, and the U.S. Marshal was told to serve the DOE at 52 Chambers Street, New York, NY 10007. See ECF No. 11. On March 2, 2022, the Clerk of Court issued the new summons as to the DOE at 52 Chambers Street, New York, NY 10007. See ECF No. 14. In a letter motion dated March 2, 2022, Individual Defendants' attorney with the Office of the Corporation Counsel wrote to the Court that "[u]pon information and belief, the U.S. Marshals Service attempted to serve [the DOE] with the Summons and Complaint at 65 Court Street in Brooklyn on or about February 15, 2022. The DOE does not ordinarily accept service at this address. The DOE may be served at either of the following addresses: 52 Chambers Street, New York, NY 10007, or through the Office of Corporation Counsel at 100 Church Street, New York, NY 10007." ECF No. 15 at 1. On that same date, Individual Defendants moved for an extension of time to answer the Complaint, which this Court granted on March 3, 2022. See id.

On April 4, 2022, Individual Defendants filed a motion to dismiss the Complaint for failure to state a claim.  See ECF Nos. 17-19.  On October 14, 2022, this Court issued an Order staying the case pending a decision on Individual Defendants' motion to dismiss.  On February 2, 2023, the District Court adopted this Court's report and recommendation granting Individual Defendants' motion to dismiss the Complaint and granting Plaintiff leave to file an amended complaint.  On March 6, 2023, Plaintiff filed an amended complaint against Defendants alleging violations of (1) Title VII, (2) the ADA, (3) Section 1981, (4) the NYSHRL and (5) the NYCHRL.  See ECF No. 29.  Individual Defendants timely filed their motion to dismiss the Amended Complaint.  See ECF No. 33.

On June 1, 2022, the U.S. Marshal reattempted service on the DOE at 52 Chambers Street, Room 308, New York, NY 10007, but service was refused on the basis that this address was "a business."  ECF No. 26.  The U.S. Marshal filed the return of service with the refusal information on June 23, 2022, and it was posted on the docket on that same date.  See id. Plaintiff addressed a letter to this Court dated November 9, 2022, requesting an extension of time to serve the DOE at 100 Church Street, New York, NY 10007.  See ECF No. 27.  On April 1, 2023, after Individual Defendants' motion to dismiss was granted with leave to replead, Plaintiff addressed a second letter to the Court stating that the DOE "needs to be served at 100 Church Street.  I am asking if I may request a new summons and hire someone else to take care of the service.  The impression was that the [DOE] was already served and when my received papers in the mail [sic], it showed otherwise."  ECF No. 31.  On April 17, 2023, the Clerk of Court issued a new supplemental summons as to the DOE to be served at 100 Church Street.  See ECF No. 32. On May 4, 2023, the U.S. Marshal served the Amended Complaint on the DOE.  See ECF No. 38.  Proof of service was filed on the docket on May 18, 2023.  See id.

On May 23, 2023, the DOE filed a motion for an extension of time to respond to the Amended Complaint.  See ECF No. 40.  The District Court granted the DOE's motion for an extension.  See 6/01/2023 Order.  The DOE timely filed its Motion to Dismiss pursuant to Rules 12(b)(5)-(6), as well as a memorandum and affidavit in support of the motion.  See ECF Nos. 41-43.  The DOE alleges that the Amended Complaint should be dismissed because (1) Plaintiff failed to timely serve the DOE; (2) Plaintiff failed to timely file a notice of claim; (3) Plaintiff's federal and state law claims are time-barred; (4) Plaintiff's Section 1981 claim, even construed as a Section 1983 claim, should be dismissed; (5) Plaintiff fails to state a claim of discrimination; (6) Plaintiff fails to state of claim of retaliation; and (7) Plaintiff is not entitled to tenure by estoppel.  See ECF No. 42.

Plaintiff timely filed a memorandum in opposition to Defendants' motions to dismiss the Amended Complaint ("Memorandum in Opposition").  See ECF No. 46.  Defendant DOE filed a reply in support of its respective motion ("Reply").  See ECF No. 47.  This report and recommendation addresses Defendant DOE's Motion to Dismiss.  See ECF No. 41.  Individual Defendants' motion to dismiss the Amended Complaint is addressed in a separate report and recommendation.

## II.    Plaintiff's Service Upon The DOE

The DOE argues that

Plaintiff failed to timely serve the DOE, and thus all claims against the DOE should be dismissed."  ECF No. 42 at 6.  The DOE states that "[f]our hundred sixty five (465) days had passed between the Court's issuance of the first Summons (see Summons, ECF Dkt. No. 10, filed January 24, 2022) and service on the DOE (see ECF Dkt. No. 38).  On March 1, 2022, Plaintiff was notified that the U.S. Marshal did not effectuate service.  See ECF Dkt. No. 11.  The next day, Plaintiff was informed of two addresses where service could be effectuated.  See ECF Dkt. No. 15. Plaintiff then waited until November 9, 2022, three hundred fourteen (314) days after the service window closed, to request an extension but failed to show good cause.

Id. at 7.  The Court rejects the DOE's argument as based on an incomplete description of the record.

**A.    Plaintiff's IFP Application Tolled The Service Period Until The Summons Was Issued**

Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  "For purposes of calculating the 90-day period for service referenced in Rule 4(m), the time runs from the date the 'complaint is filed.'  However, where a plaintiff files an application to proceed in forma pauperis, 'the 90-day period is tolled while the in forma pauperis application is pending.'"  Root v. Corning Cmty. College, No. 17 Civ. 6498 (CJS), 2019 WL 368098, at *5 (Jan. 30, 2019 W.D.N.Y.) (citing Stepney v. Rochester Hous. Auth., No. 16 Civ 6173 (FPG), 2018 WL 3110225, at *3 (W.D.N.Y. June 25, 2018) (citations omitted)).

Courts have also excluded time through the issuance of the summons by the court when a plaintiff proceeds IFP.  Courts in the Second Circuit have allowed pro se plaintiffs proceeding IFP to serve the complaint within 90 days after the summons is issued rather than counting from the date the complaint is filed.  See Melendez v. C.H.S. Correctional Health Serv., No. 21 Civ. 9163, 2021 WL 5235059, at *2 (S.D.N.Y. Nov. 8, 2021) ("Although Rule 4(m) . . . generally requires that the summons and complaint be served within 90 days of the date the complaint is filed, Plaintiff is proceeding IFP and could not have served the summons and complaint until the Court reviewed the complaint and ordered that a summons be issued.  The Court therefore extends the time to serve until 90 days after the date the summons is issued."); Thomas v. Morley, No. 20 Civ. 518020, 2021 WL 518020, at *1 (S.D.N.Y. Feb. 11, 2021) (extending the time to serve until 90 days after the date the summons is issued where "Plaintiff is proceeding

IFP and could not have served the summons and complaint until the Court reviewed the complaint and ordered that a summons be issued."); Oliphant v. Villano, No. 9 Civ. 862 (JBA), 2013 WL 2446507, at *3 (D. Conn. June 5, 2013) ("[A]n IFP plaintiff should not be punished for any delay in the issuance of process if he filed the complaint in a timely manner, with a request for leave to proceed IFP.") (internal citations omitted).  For example, in Root, the plaintiff filed the complaint on July 26, 2017, and simultaneously filed an IFP motion.  2019 WL 368098, at *5.  "It was not until August 24, 2017, that the Court denied the [IFP] application."  The district court thus assumed that "the 90-day period for service under Rule 4(m) began to run on August 24, 2017.  On September 22, 2017, Plaintiff paid the filing fee and . . . submitted a completed summons for the Clerk to issue. . . . [I]t was not until January 12, 2018, that the Clerk issued a summons to Plaintiff.  On February 20, 2018, Defendant filed the subject motion to dismiss."  Id.  In deciding whether the plaintiff has timely served the defendant, the Root Court excluded the time between when Plaintiff paid the filing fee on September 22, 2017, and when the Clerk of Court issued a summons to the plaintiff on January 12, 2018.  Id. "Plaintiff had no control over the Clerk's delay in issuing the summons.  Consequently, when Defendant filed the subject motion to dismiss on February 20, 2018, only 39 days had elapsed that could be charged to Plaintiff."  Id.

   "When a court grants a pro se plaintiff leave to proceed in forma pauperis, it 'shift[s] the responsibility for serving the complaint from [the plaintiff] to the court' and thus 'the Marshal's Office—not the plaintiff—is primarily responsible for effecting service.'"  Burris v. Nassau Cnt'y Dist. Att., No. 14 Civ. 5540 (PKC) (ARL), 2023 WL 6450398, at *5 (Sept. 30, 2023 E.D.N.Y.) (citing Wright v. Lewis, 76 F.3d 57, 59 (2d Cir. 1996)); see Rizzuto v. Annucci, No. 22 Civ. 7698 (CS), 2023 WL 254656, at *1 (S.D.N.Y. Jan. 18, 2023) ("Because Plaintiff has been granted permission to proceed IFP, he is entitled to rely on the Court and the U.S. Marshals

Service to effect service."). "Generally, a pro se litigant proceeding in forma pauperis is entitled to rely on the U.S. Marshals Service to effect service." Walker v. Schult, 717 F.3d 119, 123 n.6 (2d Cir. 2013).

Here, Plaintiff filed her IFP application and Complaint in S.D.N.Y. on October 1, 2021. See ECF Nos. 1 & 2. The District Court in S.D.N.Y. granted the IFP application on November 8, 2021. See ECF No. 5. The Clerk of Court issued the first summons as to the DOE at 65 Court Street, Brooklyn, NY 11201 on January 24, 2022. See ECF No. 10. The 90 days to serve thus only began to run on January 25, 2022.

**B. Plaintiff Reasonably Relied On The U.S. Marshal To Serve The DOE**

Under Rule 4(j)(2), "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). "The Court may extend the time to serve a defendant upon a showing of good cause." Visco v. Brentwood Union Free Sch. Dist., 991 F. Supp. 2d 426, 432 (E.D.N.Y. 2014). Courts in the Second Circuit have found that a pro se plaintiff's reliance on U.S. Marshals Service may constitute "good cause" within the meaning of Rule 4(m). See id. (finding good cause where the pro se plaintiff's delay in serving was due to the plaintiff's reasonable reliance "on the Court's erroneous Order" and finding that courts "in analogous situations," such as where a plaintiff's untimely filing was due to a delay in the U.S. Marshal Services, "found good cause" under Rule 4(m)) (citing Husowitz v. Am. Postal Workers Union, 190 F.R.D. 53, 57 (E.D.N.Y.1999) (finding that a delay of the Marshals Service constitutes good cause and collecting cases in this regard)). "Additionally, it is well settled that district courts

have discretion to grant extensions under Rule 4(m) even in the absence of good cause." <u>Buon v. Spindler</u>, 65 F.4th 64, 75 (2d Cir. 2023) (internal citations & quotation marks omitted).

Following the transfer of Plaintiff's case to this Court, this Court directed the U.S. Marshal to serve the first summons, the Complaint and Order upon the DOE.  <u>See</u> ECF No. 9. On January 24, 2022, the Clerk of Court issued the summons as to the DOE at the agency's former historic location and main office in Brooklyn at 65 Court Street, Brooklyn, NY 11201.[1] <u>See</u> ECF No. 10.  On February 15, 2022, or 22 days after the Clerk of Court issued the summons, the U.S. Marshal attempted service upon the DOE at 65 Court Street, Brooklyn, NY 11201.  <u>See</u> ECF No. 11.  Without further explanation from the DOE, the U.S. Marshal was told that the DOE needed to be served at 52 Chambers Street, 2nd Floor, New York, NY 10007.  On March 2, 2022, Individual Defendants filed a letter with the Court stating that "[u]pon information and

---

[1] The record shows confusion as to where the DOE was to be served.  Plaintiff's initial understanding that Brooklyn service would suffice was understandable because 65 Court Street is a central and historic DOE location.  "The Board of Education for the City of New York . . . was created as a public corporate entity which is a separate and distinct from the City of New York."  <u>Nacipucha v. City of N.Y.</u>, 849 N.Y.S. 2d 414, 417 (N.Y. Sup. Ct. Bronx County 2008).  "[P]ursuant to the statutory scheme in place prior to the 2002 amendment to the Education Law, it was clearly required, as a pre-condition to an action against the Board of Education, that a notice of claim and all process be served upon the Board at its designated location at 65 Court Street Brooklyn, New York in compliance with the requirements of the General Municipal Law and Education Law."  <u>Id.</u> at 418.  "By chapter 91 of the Laws of 2002, the Education Law was amended so as to radically restructure the governance of the school district of the City of New York."  <u>Id.</u>  "[A]n official notice regarding an agent for service upon this newly created hybrid 'Department' was published in the New York Law Journal on November 12, 2002 […]:

'Effective Monday, November 4, 2002, the New York City Law Department has been authorized as the agent and sole representative for the New York City Department or Board of Education upon whom (1) notices of claim against the . . . Board of Education shall be served, and (2) service of process and litigation papers in actions or proceedings against the . . . Board of Education shall be made. As of November 4, 2002, such documents shall be served on the New York City Law Department at 100 Church St. (Fourth floor), New York . . . . Any subpoena . . . should be served upon the New York City Department of Education at its offices at 52 Chambers St. (first floor), New York, New York.'"

<u>Id.</u>

belief, the U.S. Marshals Service attempted to serve [the DOE] with the Summons and Complaint at 65 Court Street in Brooklyn on or about February 15, 2022." See ECF No. 15. On March 2, 2022, the Clerk of Court issued a new summons addressed to the DOE at the agency's headquarters and as directed by Individual Defendants, at 52 Chambers St., New York, New York. See ECF No. 14. On June 1, 2022, the U.S. Marshal attempted to serve the DOE at 52 Chambers Street. See ECF No. 26. Service at that address was refused on the basis that the address was "not a business."[2] ECF No. 26. Service by the U.S. Marshal occurred 90 days after the Clerk of Court issued the second summons. See ECF No. 14.

The June 1, 2022 service at the Tweed Courthouse was sufficient. Defendant does not provide any reasonable explanation as to why the Court should find that service at 52 Chambers Street, the DOE's headquarters and the office of the Chancellor, the Chief Executive of the agency, was not valid under FRCP 4(j)(2). This is particularly true given that Corporation Counsel provided Chambers Street as a service address. See ECF No. 15 at 1. As a pro se plaintiff granted IFP status, Plaintiff reasonably relied on the U.S. Marshal to properly effect service at an address provided by Defendants' counsel. This constitutes "good cause" within the meaning of Rule 4(m).

Further, the docket indicates that the DOE's counsel, Elisheva L. Rosa, also represents Individual Defendants in this matter. As Individual Defendants were properly served with the

---

[2] The Court notes that the DOE's address at 52 Chambers Street, also known as the "Tweed Courthouse," is referred on the New York City Department of Citywide Administrative Services as "the headquarters of the [DOE]." NYC DCAS Official Website, DCAS Managed Public Buildings, Tweed Courthouse, https://www.nyc.gov/site/dcas/business/dcasmanagedbuildings/tweed-courthouse.page (last visited on Mar. 5, 2024). The New York State Education Department website lists the New York City Department of Education Chancellor's office at 52 Chambers Street. See New York State Education Department, NY State Data, NYC Chancellor's Office Data, https://data.nysed.gov/profile.php?instid=800000048663 (last visited on Mar. 27, 2024).

Complaint on February 16, 2022, see ECF Nos. 12 & 13, the DOE's counsel was on notice of Plaintiff's claims against the DOE at least from approximately that date, which were within the 90-day service window.  On March 2, 2022, Corporation Counsel acknowledged service by letter on the docket.  See ECF No. 15.  Given that the Office had notice of the lawsuit by March 2, 2022 at the latest, the DOE was also effectively served by that date.  The DOE was thus timely served at 100 Church Street and at 52 Chambers Street.

Given this valid service, the Court finds no reason to address the validity of Plaintiff's service of the Amended Complaint on the DOE after June 1, 2022.

## III.    Plaintiff's Federal Claims Under Title VII And The ADA Against The DOE

### A.  Plaintiff Failed To File A Timely EEOC Charge

Plaintiff's claims under Title VII and the ADA fail because Plaintiff did not timely administratively exhaust them.  "In New York, a federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 300 days of the alleged discrimination."  Richard v. N.Y. City Dep't of Educ., No. 16 Civ. 957 (MKB), 2022 WL 4280561, at *12 (E.D.N.Y. Sept. 15, 2022) (citing 42 U.S.C. § 2000e-5(e)(1)).[3]

---

[3] Plaintiff refers to the New York State Covid-19 tolling provision.  ECF No. 46 at 16-17.  On March 20, 2020, in response to the Covid-19 pandemic, former New York Governor Andrew Cuomo issued Executive Order No. 202.8, providing in pertinent part that: "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state . . . is hereby tolled from the date of this executive order until April 19, 2020[.]"  N.Y. Exec. Order No. 202.8 (Mar. 20, 2020).  Subsequent Executive Orders extended this Executive Order.  Courts in the Second Circuit have found that former Governor Cuomo's Covid-19 Executive Orders "had no effect on tolling . . . [the] federal statutes of limitation."  Verne v. N.Y. City Dep't of Educ., No. 21 Civ. 5427, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022); see Everett v. N.Y.C. Dep't of Educ., No. 21 Civ. 7043 (JPC), 2022 WL 2342693, at *5 (S.D.N.Y. June 29, 2022).

"Before bringing suit in federal court under the . . . ADA, a private plaintiff must file timely administrative charges with the [EEOC]." Harris v. N.Y.C. Human Resources Admin., No. 20 Civ. 2011 (JPC), 2022 WL 3100663, at *4 (S.D.N.Y. Aug. 4, 2022) (citing Hogans v. Dell Mags./Penny Press, 372 F. App'x 148, 149 (2d Cir. Apr. 19, 2010). "[A] complainant must first file a charge of discrimination with the appropriate agency before filing a lawsuit in federal court. Once the agency issues a notice of right to sue, a complainant has 90 days to file her lawsuit." Faughnan v. Nassau Health Care Corp., No. 19 Civ. 31711 (RDJ) (RLM), 2021 WL 1566138, at *2 (E.D.N.Y. Mar. 18, 2021). Federal charges under Title VII and the ADA "are subject to a 300-day statute of limitations that runs from the date the charge is filed with the agency: discriminatory conduct occurring within 300 days prior to the filing of the charge is timely; conduct occurring before the 300 days is not." Id. "In deferral states like New York— that is, those that have a state agency that enforces a state law prohibiting employment discrimination on the same basis as the federal law equivalent—a claim under both statutes is time-barred if the plaintiff does not file a charge with the EEOC (or state or local equivalent) within 300 days of the alleged unlawful employment practice." Harris, 2022 WL 3100663, at *4. "'Because the existence of its State Division of Human Rights makes New York a so-called 'deferral state' for Title VII purposes, an aggrieved employee has 300 days from time when he or she knew or should have known of an adverse employment decision to file a charge of discrimination with the EEOC.'" Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Center, No. 20 Civ. 337 (MAD) (TWD), 2022 WL 16834054, at *3 (N.D.N.Y. Nov. 9, 2022) (citing Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 379 (E.D.N.Y. 2000)); see Medina v. AAM 15 Mgmt., LLC, No. 21 Civ. 7492 (KMK), 2023 WL 2648299, at *5 (S.D.N.Y. Mar. 27, 2023) (finding that the plaintiff timely filed her EEOC less than 300 days after she became aware of her termination).

Courts in the Second Circuit have found that the "300-day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his discharge." Miller v. Int'l Telephone & Telegraph Corp., 755 F.2d 20, 23 (2d Cir. 1985); see Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000) (citing Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)) ("It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct."); Wu v. Good Samaritan Hosp. Medical Center, 815 Fed. App'x 575, 579 (2d. Cir. 2020) ("Although plaintiff's employment at the Hospital ended on August 19, 2015, she received her notice of termination on May 15, 2015, and her claims accrued on that date."); Semper v. N.Y. Methodist Hosp., 786 F. Supp. 2d 566, 577 (E.D.N.Y. 2011) ("The court's inquiry does not focus on the point at which the consequences of the act become painful; rather, the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision.") (internal citations & quotation marks omitted). Thus, the 300-day period to file an EEOC charge about a termination commences from the date the aggrieved employee receives his or her notification of termination rather than from the date that the termination became effective.

"The 'continuing violation doctrine' is an 'exception to the normal knew-or-should-have-known accrual date' if there is 'evidence of an ongoing discriminatory policy or practice.'" Antrobus v. N.Y. City Health & Hospitals Corp., 19 Civ. 7449 (KPF), 2021 WL 964438, at *6 (S.D.N.Y. Mar. 15, 2021) (citing Corona Realty Holding, LLC v. Town of N. Hempstead, 382 F. App'x 70, 72 (2d Cir. 2010)). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Id. (citing Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir.

1994)).  "Where the plaintiff complains of discrete discriminatory or retaliatory acts such as 'termination, failure to promote, denial of transfer, or refusal to hire,' such claims are not actionable if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period."  Harris, 2022 WL 3100663, at *4 (citing Davis-Garett v. Urb. Outfitters, Inc., 921 F.3d 30, 42 (2d Cir. 2019).

Plaintiff brings Title VII and ADA claims against the DOE.  See ECF No. 29 at 3.  The DOE alleges that "Plaintiff's ADA and Title VII claims are time-barred by the three-hundred-day statute of limitations set by 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(e)(1).  ADA and Title VII claims must be filed with the EEOC or equivalent local agency "within three hundred days after the alleged unlawful employment practice occurred."  ECF No. 42 at 9 (citing 42 U.S.C. § 12117(a)).  Plaintiff alleges that she "was discontinued on March 17, 2020, just when the COVID-19 pandemic hit the New York City area.  Taking into account the Executive Orders related to the COVID-19 pandemic, claims that accrued on or after May 25, 2019, are timely.  These include . . . [Plaintiff's] disqualification from subsequent employment opportunities with the [DOE]."  ECF No. 46 at 9-10.  The DOE responds that because "Plaintiff filed her EEOC complaint on January 26, 2021, only federal claims that accrued within three hundred days of the EEOC complaint – on or after April 1, 2020 – are timely.  Because Plaintiff was discontinued March 17, 2020, all of these claims are time-barred."  ECF No. 47 at 4.  This Court agrees with the DOE.

Plaintiff received a notice of her discontinuance from Defendants on January 17, 2020, effective March 17, 2020.  See ECF No. 29 at 5.  Plaintiff's January 26, 2021 EEOC charge indicates that the most recent act of discrimination from which she suffered from occurred on

16

March 17, 2020, which corresponds to the effective date of her discontinuance.[4]  See ECF No. 2 at 11.  As stated above, courts in the Second Circuit have found that where a plaintiff brings a Title VII or ADA suit in federal court, the 300-day window to file an EEOC begins to run when the plaintiff knew or should have known of the alleged discrimination.  Plaintiff received notice of her discontinuance on January 17, 2020, then filed her EEOC charge on January 26, 2021.  Plaintiff does not allege that she suffered from any discriminatory act between January 17, 2020 and March 17, 2020.  The 300-day window within which Plaintiff was required to have filed her EEOC charged ended on November 13, 2020.  Even if this Court were to calculate the 300-day period from the day Plaintiff's termination became effective, or from March 17, 2020, Plaintiff's EEOC charge would still have been untimely, as Plaintiff would have had to file her EEOC charge by January 12, 2021, which she did not do.

The Court respectfully recommends that Plaintiff's Title VII and ADA claims be dismissed as Plaintiff did not timely administratively exhaust them.

## IV.    Plaintiff's Sections 1981 And 1983 Claims Against The DOE Should Be Dismissed

Plaintiff brings Section 1981 claims against Defendant based on discrimination, hostile work environment and retaliation.  See ECF Nos. 29 at 4.  Defendant argues that "[i]t is well established that [Section 1981] does not provide a separate right of action against state actors and so these claims should be dismissed."  ECF No. 42 at 10 (citing Duplan v. City of New York,

---

[4] To the extent Plaintiff's Amended Complaint claims that she was "subjected to discrimination" after being "disqualified from subsequent employment opportunities with the [DOE]," ECF No. 29 at 6, Plaintiff does not argue that this subsequent "flagging" amounts to retaliation or falls under the "continuing violation" doctrine.  The effect of a termination, such as disqualification from future employment, is not in and of itself a discriminatory act and does not extend the time to file a charge with the EEOC.  Plaintiff did not allege in her EEOC charge that the failure to accept her employment in September 2020 constituted discrimination.  See ECF No. 2 at 11.

888 F.3d 612, 621 (2d Cir. 2018)).  "Accordingly, Plaintiff is unable to maintain a claim against

the DOE under Section 1981, and the claim must be dismissed."  Id.

As this Court noted in its first report and recommendation, see ECF No. 28 at 7, although

Plaintiff asserts Section 1981 claims against the DOE, Section 1983 provides "the exclusive

federal damages remedy for the violation of the rights guaranteed by [Section 1981] when the

claim is pressed against a state actor."  Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 735 (1989);

Duplan 888 F.3d at 616 ("[Section] 1983 provides the sole cause of action available against state

actors alleged to have violated [Section 1981].").  Under Section 1983,

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a judicial officer
> for an act or omission taken in such officer's judicial capacity, injunctive relief shall
> not be granted unless a declaratory decree was violated or declaratory relief was
> unavailable."

42 U.S.C. § 1983.  Defendant argues that "even construed as Section 1983 claims, Plaintiff's

claims still fail to state a cause of action and should thus be dismissed."  ECF No. 42 at 10.

**A.  Plaintiff Fails To Satisfy The <u>Monell</u> Claim Requirement Under Section 1983**

In order to allege municipal liability under Section 1983, a plaintiff must satisfy the three

elements of a Monell claim.  See Mitchell v. N.Y. City Dep't of Educ., 20 Civ. 1555 (PGG)

(SLC), 2021 WL 8013779, at *11 (S.D.N.Y. May 7, 2021) ("To the extent [the plaintiff] is

asserting a municipal liability claim against Defendant DOE under [Monell] he has failed to state

a claim because the Complaint does not identify a municipal policy that allegedly caused the

constitutional violation.") (citing Monell v. Dep't of Soc. Services of the City of N.Y., 436 U.S.

658 (1978)).  "The elements of a Monell claim are (1) a municipal policy or custom that (2)

causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."  Agosto v.

N.Y.C. Dep't of Educ., 982 F.3d 86, 97 (2d Cir. 2020) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).  "A government should only be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." Mitchell, 2021 WL 8013779, at *11 (internal citations & quotation marks omitted).  "A plaintiff alleging that she has been injured by the actions of a low-level municipal employee can establish municipal liability by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly."  Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012); see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125-26 (2d Cir. 2004). "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them."  Id.

### 1.   Plaintiff Fails To Identify A Municipal Policy Or Custom

"A plaintiff may satisfy the policy or custom prong in one of four ways: by alleging the existence of 1) a formal policy; 2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; 3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or 4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact."  Gonzalez v. City of N.Y., 422 F. Supp. 3d 665, 684 (S.D.N.Y. 2020).  "To establish a 'practice[ ] so persistent and widespread as to practically have the effect of law,' a plaintiff may point to evidence of misconduct that was 'sufficiently widespread and persistent to support a finding that [the acts] constituted a custom, policy, or usage of which supervisory authorities must have been aware.'"  Sylla v. N.Y. City Dep't of Educ., 664 F. Supp. 3d 311, 330 (E.D.N.Y. 2023); see Rutherford v. Westchester Cnty., No. 18 Civ. 4872 (KMK), 2020 WL 433841, at *12 (S.D.N.Y. Jan. 28, 2020) (finding that the plaintiff could not state a consistent and widespread

practice "simply by alleging his own experiences and then extrapolating to the entire jail population").

"[A] municipality may be liable for the acts of a single official—but only if that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality." Agosto v. N.Y. Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020) (citing Monell, 436 U.S. at 694). "It is not enough that an official had discretion to make a decision that was unreviewable. Rather, the official must have been sufficiently high up in the municipal hierarchy that he was responsible under state law for making policy in that area of the municipality's business . . . . Stated another way, the official must have had state-law authority to adopt rules for the conduct of the municipal government." Id. (internal citations & quotation marks omitted). Alleged discrimination of an employee by a principal or assistant principal well below the policy-making role of the DOE Chancellor, does not meet any of the requirements to be an actionable DOE policy.

Plaintiff claims that she suffered from discrimination based on her race, religion and disability when she was terminated by the DOE. See ECF No. 29 ¶ 29. Plaintiff alleges that, "[b]eginning in the year 2018-2019," Ms. Vargas and Ms. Parentini, two DOE employees, discriminated against her by treating Plaintiff differently from "non-Arab/Muslim" probationary teachers on the basis of Plaintiff's race, religion and disability. See id. ¶¶ 5-6, 9-10, 25-26, 29. Plaintiff does not refer to a "formal policy" or to "a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." Gonzalez, 422 F. Supp. 3d at 684. Plaintiff does not show that the DOE's conduct, through Ms. Vargas and Ms. Parentini's allegedly discriminatory acts, was "a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers," as Plaintiff only alleges her own

experience.  Although Plaintiff's Amended Complaint conveys that Ms. Parentini was Plaintiff's

supervisor and served as the principal at P.S. 506., Plaintiff fails to show that Ms. Parentini had

sufficient state-law authority to adopt rules for the conduct of the DOE.  Plaintiff only claims

that she emailed "Principal Parentini to inquire as to why she decided to discontinue [Plaintiff]"

after she was notified of her termination on January 17, 2020, effective March 17, 2020, but that

Ms. Parentini did not respond.  ECF No. 29 ¶¶ 22-23.  Plaintiff does not plead that Ms. Vargas

had any policy-making authority.

As Plaintiff fails to allege that she suffered from discrimination based on a municipal

policy or custom, Plaintiff fails to allege municipal liability under Sections 1981 and 1983 against.

the DOE.  The Court thus respectfully recommends that Plaintiff's Sections 1981 and 1983 claims

against Defendant DOE be dismissed.

**V.     Plaintiff's State And City Claims Against The DOE Should Be Dismissed For Failure To File A Notice Of Claim**

Plaintiff brings NYSHRL and NYCHRL claims against the DOE based on the

termination of her employment on January 17, 2020, effective March 17, 2020.

**A.     Notice-of-claim Requirement Under New York Law**

Under New York Education Law:

> No . . . claim against the district . . . shall be prosecuted or maintained against any
> . . . board of education . . . unless it shall appear by and as an allegation in the
> complaint . . . that a written verified claim upon which such action or special
> proceeding is founded was presented to the governing body of said district or school
> within three months after the accrual of such claim, and that the officer or body
> having the power to adjust or pay said claim has neglected or refused to make an
> adjustment or payment thereof for thirty days after such presentment.

N.Y. Educ. Law § 3813(1).  "The notice of claim requirement applies to claims of discrimination

against school districts under the NYCHRL and NYSHRL."  Berheim v. N.Y. City Dep't of

Educ., No. 19 Civ. 9723 (VEC) (JLC), 2020 WL 38865119, at *4 (S.D.N.Y. July 9, 2020).

"State notice of claim requirements are substantive law that must be applied by federal courts in deciding pendent state law claims." Wang v. Bethlehem Cent. Sch. Dist., 21 Civ. 1023 (LEK) (DJS), 2022 WL 3154142, at *12 (N.D.N.Y. Aug. 8, 2022). "The Second Circuit has held that state notice-of-claim statutes apply to state-law claims brought in federal court." Berkowitz v. East Ramapo Central Sch. Dist., 932 F. Supp. 2d 513, 527 (S.D.N.Y. 2013). "Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement[.]" Dingle v. City of N.Y., 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010); see Lax v. City Univ. of N.Y., 175 N.Y.S.3d 691, 701 (Sup. Ct. Kings Cnty. 2022); Friel, 947 F. Supp. 2d at 248 (dismissing the plaintiff's NYSHRL claims for failure to bring a notice of claim within the 90-day statutory period). In addition, "New York Education Law provides that 'discrimination and retaliation claims brought against the DOE under the NYSRL and NYCRL are subject to a one-year statute of limitations . . . .'" Berheim, 2020 WL 38865119, at *4 (citing Richard v. New York City Dep't of Educ., No. 16 Civ. 957 (MKB), 2017 WL 1232498, at *22 (E.D.N.Y. Mar. 31, 2017)) (citing N.Y. Educ. Law § 3813(2-b)) (collecting cases).

Plaintiff's claims against the DOE accrued when she received her termination letter on January 17, 2020, or, at the latest, on March 17, 2020. Thus, under New York Education Law §§ 3813(1), (2)(b), Plaintiff was required to file a notice of claim with the DOE within 90 days of the accrual date of her NYSHRL and NYCHRL discrimination claims, by April 16, 2020 or by June 15, 2020, at the latest. See N.Y. Ed. L. § 3813(1). Here, Plaintiff did not file a notice of claim, see ECF No. 47 at 3, and she filed her EEOC charge with the DOE on January 26, 2021. See ECF No. 2 at 6. She failed to file a timely notice of claim.

**B. Plaintiff's EEOC Charge Does Not Satisfy The Notice-of-claim Requirement**

Plaintiff argues that her EEOC charge should substitute for a notice of claim. Although "[t]he Second Circuit has not ruled on the issue of whether a letter may serve as a notice of claim under § 3813 . . . [s]ome courts 'have permitted other forms of documents, not denominated as notice of claims, to satisfy the requirement'" as long as they provide necessary information as to the nature of the claim. Berkowitz, 932 F. Supp. 2d at 528 (citing Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist., No. 06 Civ. 6027(T), 2007 WL 108470, at *3 (W.D.N.Y. Jan. 12, 2007)). "'An EEOC charge can suffice as a substitute for a notice of claim only under the rare and limited circumstance where the EEOC charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period.'" Everett v. N.Y.C. Dep't of Educ., No. 21 Civ 7043 (JPC), 2023 WL 5629295, at *10 (S.D.N.Y. Aug. 30, 2023) (citing Rettino v. N.Y.C. Dep't of Educ., No. 19 Civ. 5326 (JGK), 2020 WL 4735299, at *5 (S.D.N.Y. Aug. 14, 2020)). In order for an EEOC charge to serve as a notice of claim, it must be filed within 90 days of the accrual of the plaintiff's claim. See Friel v. Cnty. of Nassau, 947 F. Supp. 2d 239, 248 (E.D.N.Y. 2013); Grasso v. Schenectady Cnty. Public Libr., 30 A.D.3d 814, 815-16, 817 N.Y.S.2d 186, 186 (N.Y. App. Div. 3d Dep't 2006) (finding that the EEOC charge could not serve as a notice of claim where there was no evidence that the EEOC charge was filed within 90 days after the plaintiff's claim arose or that the defendant actually received the EEOC complaint within the 90-day period).

"Upon application, the court, in its discretion, may extend the time to serve a notice of claim." N.Y. Educ. Law § 3813(2-a). "'In determining whether to grant an extension of time to file a late notice of claim, courts must consider whether the school district acquired actual knowledge of the essential facts of the claim within 90 days or a reasonable time thereafter;

23

whether the plaintiff has demonstrated a reasonable excuse for her failure to serve a timely notice of claim; whether the petitioner was an infant, or was mentally or physically incapacitated; and whether the delay would 'substantially prejudice[ ]' the district or school in "maintaining its defense on the merits.'" Berheim, 2020 WL 38865119, at *4 (citing Belpasso v. City of New York, No. 07 Civ. 3627 (SHS) (DCF), 2008 WL 2676579, at *6 (S.D.N.Y. July 2, 2008)); see Bloom v. New York City Bd. of Educ., No. 00 Civ. 2728 (HBP), 2004 WL 639613, at *6 (S.D.N.Y. Mar. 30, 2004) ("New York State courts have consistently allowed filing late notice of claims where defendants have had actual knowledge of the facts constituting plaintiff's claims within three months of accrual of the claim, or a reasonable time thereafter, and there was no evidence of prejudice to defendant."); SBR Roofing, Inc. v. Richfield Springs Cent. Sch. Dist., 303 A.D.2d 886, 887 (N.Y. App. Div. 3d Dep't 2003) (allowing late notice of claim to be filed by contractor for breach because "respondents were aware of the essential facts underlying the claim and respondents make no showing of prejudice").  "It is clear that, regardless of the form of notice, the essential elements to be included in the notice are the nature of the claim, the time when, the place where and the manner in which the claim arose and, where an action in contract is involved, the monetary demand and some explanation of its computation."  Berkowitz, 932 F. Supp. 2d at 5278 (internal citations & quotation marks omitted).

Plaintiff argues that she "filed a charge of SDHR and the EEOC on January 26, 2021, outlining [her] allegations of discrimination based on disability, race/religion and retaliation, which were presented to the [DOE]" and that the DOE replied to the Complaint "on or about March 19, 2021.  As such, the [DOE] had ample notice of [Plaintiff's] discrimination and retaliation claims."  ECF No. 46 at 8.  Defendant responds that "[e]ven assuming, in arguendo, that Plaintiff's EEOC complaint satisfies the notice of claim requirement, only those claims whose cause of action accrued within ninety (90) days of the EEOC complaint and are expressly

raised in the EEOC complaint would be timely."  ECF No. 47 at 3-4.  Because "Plaintiff filed her

EEOC complaint on or about January 26, 2021," Defendant argues that "the January 26, 2021

complaints act as a timely notice of claim only for those claims that accrued between October 28,

2020 and January 26, 2021 **and** are expressly raised in the EEOC complaint."  Id. at 4 (emphasis

in original).  This Court agrees with Defendant.  Plaintiff's most recent discrimination claim

accrued more than 90 days before she filed the EEOC on January 26, 2021, and before

Defendant learned of the charge.  Thus, the EEOC cannot act as a timely substitute for Plaintiff's

late notice of claim, and Plaintiff did not satisfy the notice-of-claim requirement under N.Y.

Educ. Law § 3813(1).  This Court lacks the authority to permit a filing of a late notice of claim.

Because Plaintiff did not file a valid notice of claim within the statutorily required 90

days, this Court does not have jurisdiction to hear Plaintiff's state law claims against the DOE.

That the EEOC charge itself was not timely filed eliminates any reliance on it as a substitute for

the notice of claim.  The Court respectfully recommends that Plaintiff's state and city law claims

against the DOE be dismissed.[5]

---

[5] To the extent the DOE argues that Plaintiff's state law claims are time-barred by the one-year
statute of limitations, see ECF No. 42 at 18, this Court need not decide this issue but notes that
Plaintiff's Complaint may have been timely filed.  Some courts in the Second Circuit have found
that the statute of limitations for NYSHRL and NYCHRL claims are tolled during the period in
which a complaint is pending before the EEOC.  See Humphreys v. N.Y.C. Health & Hosps.
Corp., No. 16 Civ. 9707 (VSB), 2018 WL 3849836, at *3 (S.D.N.Y. Aug. 10, 2018) (collecting
cases).  New York State's Covid-19 Executive Order No. 202.8 and subsequent Orders tolled the
time to begin, file or serve "any legal action, notice, motion, or other process or proceeding, as
prescribed by the procedural laws of the state," from March 20, 2020 through November 3, 2020.
See N.Y. Exec. Order No. 202.8 (Mar. 20, 2020).  Here, Plaintiff's discrimination claim as to her
termination accrued on January 17, 2020.  Without any tolling provisions, Plaintiff's one-year
statute of limitations as to her state law claims would have expired on January 17, 2021.  The
statute of limitations period ran from January 18, 2020 to March 19, 2020, or for 61 days, until
the Covid-19 tolling period started.  The statute of limitations began to run again from November
4, 2020 to January 25, 2021, or for 82 days.  The statute of limitations was tolled again during

25

## VI.    Plaintiff's Tenure-by-estoppel Claim

Plaintiff claims tenure by estoppel.  ECF No. 29 ¶ 29.  This claim is barred by the failure to file a timely notice of claim, as discussed above, as well as by a failure to state a claim.

"Pursuant to Education Law § 3012(1)(a) . . . [t]he employment of a probationary teacher can be terminated at any time during the probationary period, without any reason and without a hearing, whereas the employment of a tenured teacher can be terminated only after formal disciplinary proceedings."  Bonilla v. Brentwood Union Free School Dist., 220 A.D.3d 858, 860, 198 N.Y.S.3d 365, 365 (N.Y. App. Div. 2d Dep't 2023).  "Education Law § 3012(1)(a)(ii) provides for a four-year probationary period for teachers generally and a two-year probationary period for teachers who have worked as regular substitutes for two years."  DeNigris v. Smithtown Central Sch. Dist., 217 A.D.3d 95, 101, 193 N.Y.S.3d 175, 175 (N.Y. App. Div. 2d Dep't 2023).  "A teacher who is not to be recommended for tenure must be so notified in writing no later than 60 days before the expiration of his or her probationary period."  Matter of Brown v. Board of Educ. of Mahopac Cent. Sch. Dist., 129 A.D.3d 1067, 1070, 13 N.Y.S.3d 131, 131 (N.Y. App. Div. 2d Dep't 2015).  "Under New York law, a teacher who has not been formally granted tenure may obtain tenure by estoppel."  Brenes v. City of New York, 733 F. Supp. 2d 357, 360 (E.D.N.Y. 2010).  "Tenure by estoppel is obtained when a school board accepts the continued services of a teacher or administrator, but fails to take the action required by law to either grant or deny tenure prior to the expiration of the teacher's probationary term."  Id. (internal citations

---

the pendency of Plaintiff's Complaint before the EEOC from January 26, 2021 through July 5, 2021.  Another 86 days passed from July 6, 2021 through September 30, 2021, until Plaintiff filed her Complaint on October 1, 2021.  Thus, Plaintiff filed the Complaint within a year of the accrual date given this tolling.  Nonetheless, the failure to file a timely notice of claim is not salvaged by the timely filing of the Complaint.

& quotation marks omitted).

"A teacher who has acquired tenure by estoppel, but is nonetheless improperly terminated, is entitled to reinstatement, retroactive to the last date of employment, back pay, and all accrued benefits." Matter of Brown, 13 N.Y.S.3d at 131. Where a probation teacher is rehired after resigning or being properly terminated before the expiration of the teacher's probation period, a new probation period starts upon the rehiring. See Wolin v. Walcott, 127 A.D.3d 648, 649 (N.Y. App. Div. 1st Dep't 2015) (finding that when the DOE rehired the plaintiff "as a teacher at a different school, the school at issue, she was subject to a new three-year term of probation, which was extended by another agreement").

Here, Plaintiff alleges that she is entitled to tenure by estoppel because she taught "beyond the expiration of the probationary period with the knowledge and consent of the [DOE]." ECF No. 46 at 23; ECF No. 29 ¶ 29. Plaintiff alleges that she "was appointed as a probationary special education teacher at PS 506 within the NYCDOE on or about March 22, 2016" and that her "tenure date was March 22, 2020." ECF No. 46 at 23. After the DOE gave a notice of discontinuation of Plaintiff's employment on January 17, 2020, Plaintiff was "hired at a NYCDOE preK recreational center from March 23, 2020 until April 15, 2020." Id. Defendant moves to dismiss Plaintiff's claim for tenure by estoppel on the basis that Plaintiff's termination letter "undoubtedly constituted 'the action required by law' to deny her tenure." ECF No. 42 at 34 (citing N.Y. Educ. Law § 2573-1(a)(i)). This Court agrees with Defendant. Plaintiff received her written termination notice on January 17, 2020, or 65 days before the expiration of her probation period on March 22, 2020. On January 17, 2020, Plaintiff also received a letter from Karina Costantino, Superintendent at the DOE, formally denying Plaintiff's certification of completion of her probation period with the DOE and stating that Plaintiff's probation period would end on March 20, 2020. See ECF No. 19-6 at 2. Plaintiff does not allege any defect in this process, separate from her discrimination claim. Plaintiff does not allege any facts as to why

her hiring by a different public school for different grade levels for a period of less than one month after the completion of her probation period and the effective date of her termination could reinstate and extend her probation period. Plaintiff fails to state a claim for tenure by estoppel.

## VII.    Conclusion

For the foregoing reasons, it is respectfully recommended that the DOE's Motion to Dismiss be granted because (1) Plaintiff failed to timely exhaust her Title VII and ADA claims; (2) Plaintiff failed to state a Section 1981 and Section 1983 claims against the municipal employer; (3) Plaintiff failed to timely file a notice of claim as to her state and city law claims; and (4) Plaintiff failed to state a tenure-by-estoppel claim. Plaintiff's claims against the DOE should be dismissed.

## VIII.    Objections

This report and recommendation will be filed electronically and will be mailed to Sheren Jadallah, 68 Gelston Ave., Brooklyn, NY 11209. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a

magistrate [judge]'s recommended decision, it waives any right to further review of that

decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
         March 28, 2024

                                                            *Vera M. Scanlon*
                                                  _____
                                                            VERA M. SCANLON
                                                  United States Magistrate Judge