UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
SHEREN JADALLAH,                          :
                                          :
               Plaintiff,                 :
                                          :      **REPORT AND RECOMMENDATION**
       -against-                          :
                                          :      21 Civ. 6390 (DG) (VMS)
NEW YORK CITY DEPARTMENT OF               :
EDUCATION, DANA PARENTINI,                :
ELIBELK VARGAS,                           :
                                          :
               Defendants.                :
--------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

        Defendants Dana Parentini ("Ms. Parentini") and Elibelk Vargas ("Ms. Vargas") (together,

"Individual Defendants") bring this motion to dismiss pro se Plaintiff Sheren Jadallah

("Plaintiff")'s amended complaint ("Amended Complaint").  See Amended Compl., ECF No. 29;

Mot. to Dismiss Am. Compl., ECF No. 33.  Individual Defendants moved to dismiss Plaintiff's

initial complaint ("Complaint").  See Compl., ECF No. 2; Mot. to Dismiss Compl., ECF No. 17.

This Court issued a report and recommendation recommending that Individual Defendants'

motion to dismiss the Complaint be granted but that Plaintiff be granted leave to file an amended

complaint.  See ECF No. 28.  Following the District Court's adoption of this Court's report and

recommendation and dismissal of the Complaint with leave to replead, Plaintiff timely filed the

Amended Complaint.  See ECF No. 29.  The Amended Complaint is similar to the original

Complaint on which the initial report and recommendation was based.  The significant changes

are in ¶¶ 6-10, 12-13, 16 and 23-25 of the Amended Complaint.[1]

---

[1] The Amended Complaint adds details about the treatment Plaintiff received from Individual
Defendants during her employment.  For example, Plaintiff was "observed more frequently
compared to other teachers" and was the only teacher asked to "pull out every one of [her]
class's binders for review."  ECF No. 29 ¶¶ 7, 10.  The Amended Complaint also states that,
although Plaintiff's overall ratings were effective, Plaintiff was discontinued "while an Asian

Individual Defendants now move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") arguing that (1) Plaintiff's Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), claims should be dismissed for lack of individual liability; (2) Plaintiff's Section 1981 claim should be dismissed; (3) Plaintiff's Section 1981 claim, even construed as a Section 1983 claim, should be dismissed; (4) Plaintiff fails to state discrimination, failure-to-accommodate and hostile-work-environment state and city law claims under the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 ("NYCHRL"); (5) Plaintiff fails to state a retaliation claim under the NYSHRL and NYCHRL; (6) Plaintiff is not entitled to tenure by estoppel; and (7) Plaintiff failed to timely serve co-Defendant the Department of Education ("DOE"). See ECF Nos. 33-34.

The District Court referred Individual Defendants' Motion to Dismiss to this Court. In its first report and recommendation, this Court respectfully recommended that Plaintiff's Title VII and ADA claims in the Complaint be dismissed on the basis that individuals cannot be held liable under these statutes. See ECF No. 28 at 6. To the extent Plaintiff is raising claims of individual liability again under these statutes, the Court respectfully recommends that Plaintiff's Title VII and ADA claims in the Amended Complaint be dismissed on the same basis previously stated. See id. As to Individual Defendants' arguments that Plaintiff is not entitled to tenure by estoppel and that Plaintiff failed to timely serve the DOE, see ECF No. 34 at 29-31, the Court addresses those issues in its report and recommendation on the DOE's motion to dismiss. See DOE Mot.

---

probationary teacher, with poor ratings was granted tenure" and "another non-Arab probationary teacher, who had poor ratings was provided additional support and not discontinued." Id. ¶¶ 24-25.

to Dismiss, ECF No. 41; ECF No. 49.  For these reasons, and because Individual Defendants cannot provide Plaintiff with tenure, the Court respectfully recommends that the tenure-by-estoppel claim be dismissed.  This Court addresses Individual Defendants' Motion to Dismiss in that it seeks to dismiss Plaintiff's discrimination, hostile-work-environment and retaliation claims under Sections 1981 and 1983, the NYSHRL and the NYCHRL.

For the following reasons, I respectfully recommend that Individual Defendants' Motion to Dismiss be granted in part and denied in part.

## I.    Factual Background

The following facts are derived from Plaintiff's Amended Complaint and are assumed to be true for the purposes of this motion.  See Am. Compl., ECF No. 29.

On March 22, 2016, Plaintiff began work as a probationary special education teacher with the DOE at P.S. 506 in Sunset Park, Brooklyn.  See id. ¶ 1.  From 2016 through 2019, Plaintiff's overall annual ratings were "Effective" although Plaintiff received a "Developing" rating on Plaintiff's Measures of Teacher Practice evaluation for the 2018-19 school year.  See id. ¶ 2.  Plaintiff self-identifies as "Arab/Muslim" and disabled, due to her depression and anxiety.  Id. ¶¶ 3, 29.

Beginning in the 2018-19 school year, Plaintiff's colleague, Ms. Vargas, began "harassing" Plaintiff with "negative evaluations, excessive classroom visits" and observing Plaintiff "more frequently compared to other teachers."  Id. ¶¶ 6-7.  According to Plaintiff, Ms. Vargas also excluded Plaintiff "from a reward that all other third grade teachers were invited to." Id. ¶ 9.  Plaintiff recalls that Ms. Vargas would yell at Plaintiff or disrespect Plaintiff in front of other teachers, exacerbating Plaintiff's anxiety.  Id. ¶ 11.  After one such occasion, Plaintiff "had a breakdown" and complained to her supervisor, Ms. Parentini, about the way Ms. Vargas treated

Plaintiff.  Id.  Individual Defendants were aware of the way their behavior harmed Plaintiff.  Id. ¶ 12.  Ms. Vargas once told Plaintiff that Plaintiff was "too sensitive, get over it."  Id. ¶ 13.

In or around October 2019, Individual Defendants told Plaintiff that Plaintiff "would be most likely granted tenure or an extension of probation."  Id. ¶ 15.  On November 4, 2019, Plaintiff received "an unjustified disciplinary letter" from Ms. Vargas alleging that Plaintiff was "not actively teaching" the students.  Id. ¶ 16.  On November 11, 2019, Plaintiff suffered an anxiety attack from Ms. Vargas's "continuous harassment," which forced Plaintiff to take an ambulance from the school to the hospital.  ECF No. 29 ¶ 17.  Ms. Vargas did not send someone with Plaintiff to the hospital in the ambulance "contrary to normal protocol."  Id.  Plaintiff received a diagnosis for job "stress-related anxiety" and PTSD.  Id. ¶ 19.  On November 26, 2019, Plaintiff had another panic attack while being observed by Ms. Parentini.  Id. ¶ 20.  On January 6, 2020, Plaintiff received "Ineffective ratings on an observation conducted by Principal Parentini."  Id. ¶ 21.  On January 17, 2020, Plaintiff received a notice of discontinuance from the school, effective March 17, 2020.  Id. ¶ 22.  On January 17, 2020, Karina Costantino, a superintendent at the DOE, addressed a "Denial of Completion of Probation Letter" to Plaintiff denying Plaintiff's certification of completion of her probation period with the DOE.  See ECF No. 19-6 at 2.  The Costantino letter also stated that Plaintiff's probation period "shall terminate as of the close of business 60 days from the date of this letter or the probation completion date listed above [i.e., March 20, 2020], whichever occurs first."  Id.  On March 4, 2020, Plaintiff emailed Ms. Parentini to inquire as to why Ms. Parentini decided to discontinue Plaintiff, but Ms. Parentini did not respond.  Id. ¶ 23.  Plaintiff was discontinued when her overall ratings were effective "while an Asian probationary teacher, with poor ratings was granted tenure."  Id. ¶ 24.  A "non-Arab probationary teacher, who had poor ratings was provided additional support and not discontinued."  Id. ¶ 25.  Plaintiff's employment terminated on March 17, 2020.  Id. ¶ 22.

From March 23, 2020 to April 15, 2020, after the end of her employment at P.S. 506, Plaintiff worked at a DOE preK recreational center, which Plaintiff alleges qualifies her for tenure by estoppel.  Id. ¶ 26.  Plaintiff has been unable to find regular employment within the DOE since her employment was discontinued from P.S. 506.  Id. ¶ 27.  On or about September 30, 2020, Plaintiff was "nominated for a position at PS 1 in Brooklyn for an elementary school teaching position, but was . . . flagged on or about October 1, 2020, and the nomination did not go through."  Id. ¶ 27.

## II.   Discussion

The Court considers Plaintiff's claims of discrimination, hostile work environment and retaliation against Individual Defendants based on Sections 1981 and 1983, NYSHRL and NYCHRL.  See ECF No. 29 at 4.  "Generally, the Court must construe complaints filed by pro se litigants liberally and interpret them to raise the strongest arguments that they suggest."  Atencio v. U.S. Postal Serv., No. 14 Civ. 7929 (GHW), 2015 WL 7308664, at *4 (S.D.N.Y. Nov. 19, 2015) (internal citations & quotation marks omitted).

### A.   Standing Under Sections 1981 And 1983

As this Court stated in its first report and recommendation, Plaintiff's Section 1981 claims must be construed as Section 1983 claims.  See ECF No. 28 at 7.  Section 1983 "provides the sole cause of action available against state actors alleged to have violated [Section] 1981."  Duplan v. City of N.Y., 888 F.3d 612, 616 (2d Cir. 2018).

"An individual may be held liable under [Sections 1981 and 1983] only if that individual is 'personally involved in the alleged deprivation.'"  Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (quoting Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004)); see Sylla v. N.Y. City Dep't of Educ., 664 F. Supp. 3d 311, 332 (E.D.N.Y. 2023).  "Personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional [or statutory] violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which [unlawful] practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that [unlawful] acts were occurring.

Sylla, 664 F. Supp. 3d at 332 (quoting Back, 365 F.3d at 127). "In addition to fulfilling one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. Finally . . . a plaintiff must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic." Littlejohn, 795 F.3d at 314 (internal citations & quotation marks omitted).

Individual Defendants argue that Plaintiff's Section 1983 claims against them should be dismissed because "the Amended Complaint is devoid of any facts that suggest the challenged acts were performed pursuant to a municipal policy or custom, as required to maintain a § 1983 action against a municipality." ECF No. 34 at 8 (internal citations & quotation marks omitted) (emphasis in original). Although "[a] claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself, rather than a suit against the individual personally," Lore v. City of Syracuse, 670 F.3d 127, 164 (2d Cir. 2012), "[a] suit against an individual in his personal capacity is not a suit against the governmental entity." Id.

Plaintiff has not identified a municipal policy or custom to bring a Section 1983 claim against them in their official capacity, so the official capacity claims must be dismissed. The Court now looks at whether Ms. Parentini and Ms. Vargas can each be held liable for discrimination, hostile work environment and retaliation in their individual capacities under Section 1983 and under the NYSHRL and the NYCHRL.

## B.  Discrimination

Plaintiff alleges discrimination based on her Arab race, Muslim religion and anxiety disability under Section 1983, the NYSHRL and the NYCHRL.  See ECF No. 29 at 4-5.

### 1.  Section 1983 Discrimination Claim

Plaintiff brings a Section 1983 discrimination claim on the basis that she suffered from discrimination based on her Arab race and Muslim religion.  Plaintiff claims that because of her "Arab/Muslim ethnicity," she suffered from "an unwarranted termination of [her] employment and disqualification from subsequent employment opportunities with the [DOE]."  ECF No. 29 ¶ 29.[2]

"Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, 'protect[s] public employees from various forms of discrimination, including hostile work environment and disparate treatment' on the basis of race."  Littlejohn, 795 F.3d at 320 (citing Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)).  Section 1983 also protects against discrimination based on "color, religion, sex or national origin."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015).  Section 1983 does not protect against disability discrimination.  See Prentice v. Port Auth. of N.Y. & N.J., No. 15 Civ. 738 (ADS) (AKT), 2017 WL 2271364, at *5 (E.D.N.Y. May 23, 2017) ("[F]reedom from discrimination on the basis of disability is a right secured by statute, not by the Constitution.  Thus, where a claim of disability discrimination is premised on the substantive rights provided by the ADA, it will not be independently actionable under § 1983.") (internal citations & quotation marks omitted).

---

[2] Plaintiff interchangeably identifies her race as "Arab" and "Arab/Muslim."  See ECF No. 29 at 5, ¶ 29.  Based on the Plaintiff's use of these terms to refer to her race and for the purposes of this report and recommendation, the Court will refer to Plaintiff's race as "Arab."

"[F]or a § 1983 discrimination claim to survive . . . a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 88 (2d Cir. 2015). To survive a motion to dismiss under Title VII, "in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 86. A plaintiff must only allege facts that "give plausible support to a minimal inference of discriminatory motivation." Littlejohn, 795 F.3d at 311 (applying the standard to Title VII and Section 1983 claims).

To the extent Plaintiff brings discrimination claims based on her disability under Section 1983, those claims should be dismissed because Section 1983 does not protect against disability discrimination. Thus, the Court only looks at Plaintiff's Section 1983 discrimination claims based on race and religion for each Individual Defendant.

### a. Ms. Parentini

Plaintiff alleges that she was discontinued when her overall ratings were effective "while an Asian probationary teacher, with poor ratings was granted tenure." Id. ¶ 24. "Additionally, another non-Arab probationary teacher, who had poor ratings was provided additional support and not discontinued." Id. ¶ 25. On March 4, 2020, Plaintiff emailed Ms. Parentini to inquire as to why she decided to discontinue Plaintiff "after telling [her] in the beginning of the year that she was going to extend [Plaintiff's] probationary service, if [she] did not obtain tenure," but Ms. Parentini did not respond. Id. ¶ 23. "It is a basic policy underlying Education Law § 2573(1)(a) that the responsibility for selecting probationary teachers and evaluating them for appointment on tenure should lie with the Board of Education upon appropriate recommendation of its

professional administrators."  Muller v. New York City Dep't of Educ., 142 A.D.3d 618, 620, 37 N.Y.S.3d 138, 138 (N.Y. App. Div. 2d Dep't 2016) (internal citations & quotation marks omitted).

### i.   Racial Discrimination

Applying the Second Circuit's plausibility standard to Plaintiff's race-based discrimination claim, as well as the liberal standard for pro se litigants, the Court finds that Ms. Parentini's ratings of Plaintiff's performance and the fact that Ms. Parentini directly terminated Plaintiff by sending her the termination letter show that Plaintiff alleged that Ms. Parentini "participated directly in" Plaintiff's termination and was personally involved in the alleged discrimination.

Plaintiff has also sufficiently alleged a prima facie discrimination case as to her termination.  The facts that "an Asian probationary teacher, with poor ratings was granted tenure," id. ¶ 24, and that "another non-Arab probationary teacher, who had poor ratings was provided additional support and not discontinued, yet [Plaintiff] was," id. ¶ 25, are a sufficient basis upon which to infer race-based discrimination at this stage.

### ii.   Religious Discrimination

Even applying the liberal standard for pro se litigants, the Court finds that Plaintiff has failed to support her claim of discrimination based on religion under Section 1983.  Plaintiff's Amended Complaint does not include facts to support the claim that Plaintiff's Muslim religion was a factor in Ms. Parentini's decision to terminate Plaintiff.  Whereas Plaintiff's statement that "an Asian probationary teacher, with poor ratings was granted tenure," id. ¶ 24, and a "non-Arab probationary teacher, who had poor ratings was provided additional support and not discontinued, yet [Plaintiff] was," id. ¶ 25, sufficiently supports an inference of race-based discrimination, Plaintiff does not state that non-Muslim teachers who received similar or inferior

ratings from Plaintiff were not terminated or given tenure.  Thus, the Court respectfully recommends that Individual Defendants' motion to dismiss Plaintiff's Section 1983 discrimination claim against Ms. Vargas be denied as to race discrimination and granted as to religious discrimination.

**b. Ms. Vargas**

In the context of discrimination claims under Section 1983, Second Circuit courts have looked at allegations of discrimination, which "even if they do not independently constitute adverse employment actions, provide relevant background evidence by shedding light on [a defendant's] motivation" to treat a plaintiff "differently because of his ethnicity." Vega, 801 F.3d at 88 (internal citations & quotation marks omitted).

Plaintiff alleges that Ms. Vargas "would treat [Plaintiff] differently than other non-Arab/Muslim teachers.  For example, whenever Principal Parentini would ask AP Vargas to assist [Plaintiff] or speak to [Plaintiff] about something, [Ms. Vargas] would yell at [Plaintiff] or speak to [her] in a very disrespectful tone."  ECF No. 29 ¶ 5.  On November 4, 2019, Plaintiff "received an unjustified disciplinary letter . . . from Ms. Vargas, falsely alleging that [Plaintiff] was not actively teaching [her] students."  Id. ¶ 16.  Plaintiff also alleges that Ms. Vargas harassed Plaintiff "with negative evaluations," observed Plaintiff "more frequently compared to other teachers," excluded her from faculty events and "emails to the third and fourth grade team about being evaluated by the state," and disrespected her in front of other teachers.  Id. ¶¶ 6-11, 18.

Applying the Second Circuit's plausibility standard to Plaintiff's discrimination claim, as well as the liberal standard for pro se litigants, the Court considers Ms. Vargas's actions towards Plaintiffs as "relevant background evidence" towards a plausible race discrimination claim related to her termination under Section 1983.  Although not clearly explained in the Amended

Complaint, it appears that Plaintiff was terminated because of her poor evaluations and disciplinary letter upon which Ms. Parentini and the superintendent relied. Plaintiff has alleged that Ms. Vargas harassed her with negative evaluations, see ECF No. 29 ¶ 6, and that she received "an unjustified disciplinary letter dated November 1, 2019 from AP Vargas, falsely alleging that [Plaintiff] was not actively teaching [her] students." ECF No. 29 ¶ 16. The Court finds that these allegedly unjustified evaluations contributed to Plaintiff's termination, which was adverse action. See Colistra, 2018 WL 4211909, at *12. Because non-Arab teachers with ineffective reviews received tenure or were not terminated, Plaintiff was treated differently from non-Arab teachers. Ms. Vargas was personally involved in these discriminatory actions. The Court thus finds that Plaintiff sufficiently alleged that Ms. Vargas directly participated in the discriminatory acts that led to Plaintiff's termination.

As stated above, even applying the liberal standard for pro se litigants, the Court finds that Plaintiff has failed to support her claim that a discrimination against based on religion under Section 1983. Plaintiff's Amended Complaint does not include facts to support the claim that Plaintiff's Muslim religion was a factor in Ms. Vargas's negative evaluations of Plaintiff or in her conduct towards Plaintiff. Whereas Plaintiff's statement that "an Asian probationary teacher, with poor ratings was granted tenure," id. ¶ 24, and a "non-Arab probationary teacher, who had poor ratings was provided additional support and not discontinued, yet [Plaintiff] was," id. ¶ 25, sufficiently supports an inference that Ms. Vargas's evaluations contributed to race-based discrimination, Plaintiff does not state that Ms. Vargas positively reviewed or helped non-Muslim teachers who performed at a similar level as or an inferior level to Plaintiff.

The Court respectfully recommends that Individual Defendants' motion to dismiss Plaintiff's Section 1983 discrimination claim against Ms. Vargas be denied as to racial discrimination and granted as to religious discrimination.

## 2. NYSHRL Discrimination Claim

To prevail on a claim of employment discrimination under the NYSHRL, Plaintiff must show that "(1) she falls within a protected class, (2) she was performing her duties satisfactorily, (3) she was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." Bermudez, 783 F. Supp. 2d at 575. "Claims of employment discrimination under the NYSHRL . . . are analyzed under the same . . . framework applied to Section 1983 and Title VII claims of employment discrimination." Colon v. City of N.Y., No. 19 Civ. 10435 (PGG) (SLC), 2021 WL 4943552, at *23 (S.D.N.Y. Jan. 15, 2021) (citing Bermudez, 783 F. Supp. 2d at 576). In Colon, the court found that because the plaintiff had "adequately alleged the Discrimination Claim . . . under federal law, he ha[d] also adequately alleged the NYSHRL Discrimination Claim and the NYCHRL Discrimination Claim." Id. "Under . . . the NYSHRL, a plaintiff need not prove (or plead) that 'the causal link between injury and wrong is so close that the injury would not have occurred but for the act.'" Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 453 (S.D.N.Y. 2023) (citing Farmer v. Shake Shack Enterprises, LLC, 473 F. Supp. 3d 309, 325-26 (S.D.N.Y. 2020). "It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." Id. (citing Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019)). "The necessary inference may be derived from a variety of circumstances, including 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group[.]'" Id. (citing Detouche v. JTR Transp. Corp., No. 17 Civ. 7719, 2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020)). "[A] showing that an employer treated [the] plaintiff less favorably than a similarly situated employee outside his protected

12

group . . . is a recognized method of raising an inference of discrimination for the purpose of making out a <u>prima facie</u> case." <u>Id.</u> at 454 (citing <u>Ruiz v. Cnty. of Rockland</u>, 609 F.3d 486, 491 (2d Cir. 2010)). In <u>Kirkland-Hudson</u>, the district court found that the plaintiff's "allegations that non-Black social workers did not have unbalanced schedules while Black social workers did— employees who hold the same educational degree and title," sufficiently alleged racial discrimination at the motion-to-dismiss stage. <u>Id.</u>; <u>see</u> <u>Trachtenberg v. Dep't of Educ. of City of N.Y.</u>, 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013) (holding that the plaintiff sufficiently pled an inference of age discrimination when she alleged teachers under 40 were treated differently than teachers above 40, who were subject to similar mistreatment as the plaintiff).

"Under . . . the NYSHRL, individual liability exists only where a defendant actually participate[d] in the conduct giving rise to a discrimination claim." <u>Nieblas-Love v. N.Y. City Housing Authority</u>, 165 F. Supp. 3d 51, 75-76 (S.D.N.Y. 2016) (internal citations & quotation marks omitted). "In assessing claims of discrimination under the NYSHRL, direct individual liability is 'limited to individuals with ownership interest or supervisors, who themselves[ ] have the authority to hire and fire employees.'" <u>Friederick v. Passfeed, Inc.</u>, No. 21 Civ. 2066 (RA), 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022) (citing <u>Malena v. Victoria's Secret Direct, LLC</u>, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012)). "Nevertheless, both the NYSHRL and NYCHRL offer a second type of individual liability. The NYSHRL makes individuals liable for "aid[ing], abet[ting], incit[ing], compel[ling] or coerc[ing] the doing of" a discriminatory act.'" <u>Bonaffini v. City Univ. of N.Y.</u>, No. 20 Civ. 5118, 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021) (citing N.Y. Exec. Law § 296(6)). "Under this rule, a plaintiff may succeed in a claim under the NYSHRL by showing the employer entity's having encouraged, condoned, or approved the discriminatory conduct of a sole employee – the same discriminatory conduct which then, perhaps circularly, proves individual liability under the aiding and abetting

provision." Id., at *2 (internal citations & quotation marks omitted).

As stated above, Plaintiff alleges that despite receiving overall effective ratings, Ms. Parentini terminated her on January 17, 2020, "while an Asian probationary teacher, with poor ratings was granted tenure," ECF No. 29 ¶ 24, and that "another non-Arab probationary teacher, who had poor ratings was provided additional support and not discontinued, yet [Plaintiff] was." Id. ¶ 25. Ms. Vargas harassed Plaintiff "with negative evaluations," observed Plaintiff "more frequently compared to other teachers," excluded her from faculty events and "emails to the third and fourth grade team about being evaluated by the state," and disrespected her in front of other teachers. Id. ¶¶ 6-11, 18. Because "a showing that an employer treated [the] plaintiff less favorably than a similarly situated employee outside his protected group . . . is a recognized method of raising an inference of discrimination for the purpose of making out a prima facie case," Kirkland-Hudson, 665 F. Supp. 3d at 454, the Court finds that Plaintiff's allegations plausibly give rise to an inference of unlawful discrimination against Individual Defendants under the NYSHRL based on Plaintiff's Arab race.

To the extent Plaintiff brings a discrimination claim against Individual Defendants under the NYSHRL based on Plaintiff's religion and her disability, the Court finds that Plaintiff fails to show that her termination "occurred under circumstances giving rise to an inference of unlawful discrimination" based on these characteristics. Bermudez, 783 F. Supp. 2d at 575. The Court finds that Plaintiff does not sufficiently allege other than in passing that her religion and disability were a motive that led to her termination. For example, Plaintiff does not compare the circumstances of her termination to that of non-Muslim or nondisabled teachers at the school but states that two non-Arab teachers with poor ratings received more favorable treatment than Plaintiff. See ECF No. 29 ¶¶ 24-25.

The Court respectfully recommends that Individual Defendants' motion to dismiss

14

Plaintiff's NYSHRL race discrimination claim be denied but that the motion to dismiss the religious and disability discrimination claims be granted.

### 3. NYCHRL Discrimination Claim

The NYCHRL discrimination standard is more liberal that under the NYSHRL.  See Bonaffini, 2021 WL 2895688, at *4 (concluding that plaintiff sufficiently stated a claim for discrimination under the NYSHRL and "[g]iven the NYCHRL's 'far more liberal' standard . . . plaintiff has stated a claim under the NYCHRL as well") (citing Lebowitz v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 158, 173 (E.D.N.Y. 2017)).  "The NYCHRL provides an even broader basis for direct individual liability than does the NYSHRL, in that it 'provides for individual liability of an employee 'regardless of ownership or decisionmaking power.'"  Friederick, 2022 WL 992798, at *9 (citing Malena, 886 F. Supp. 2d at 366).

For the same reasons stated under the NYSHRL, the Court finds that Plaintiff's allegations plausibly give rise to an inference of unlawful discrimination under the NYCHRL based on Plaintiff's Arab race.  The Court respectfully recommends that Individual Defendants' motion to dismiss Plaintiff's NYCHRL race discrimination claim be denied.  For the reasons stated above, even under the liberal standard of the NYCHRL, Plaintiff has not alleged any facts to show that her religion or disability were a reason for her termination.  Individual Defendants' motion to dismiss Plaintiff's religious and disability discrimination claims should be granted.

## C.  Hostile-work-environment Claim

### 1. Section 1983 Hostile-work-environment Claim

To the extent Plaintiff brings a hostile-work-environment claim based on her disability under Section 1983, those claims should be dismissed because Section 1983 does not protect against disability discrimination.  Thus, the Court only looks at Plaintiff's Section 1983 hostile-work-environment claims based on race and religion against Individual Defendants.

In the first report and recommendation, the Court found that Plaintiff had not sufficiently alleged a hostile-work-environment claim.  See ECF No. 28 at 8-10.  For the reasons stated below, the Court finds that Plaintiff's Amended Complaint, with its new factual allegations, sufficiently supports a federal hostile-work-environment claim based on race and religion as to Ms. Vargas but not as to Ms. Parentini.

"To establish a hostile work environment under . . . § 1983, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Littlejohn, 795 F.3d at 320-21 (citations & internal quotation marks omitted).  In order to bring a hostile-work-environment claim under Section 1983, a plaintiff must "demonstrate that the hostile work environment was caused by animus towards her as a result of her membership in a protected class."  Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011).  "This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (internal citations & quotation marks omitted).  "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."  Id.; see Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999).

In order to "establish individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right.  If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant."  Raspardo v. Carlone, 770 F.3d 97, 115 (2d Cir. 2014) (emphasis in original) (internal citations & quotation marks omitted).  "Personal involvement for managers in this context can include 'failure to take action upon receiving information that constitutional

violations are occurring.'" <u>Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2</u>,

798 F. Supp. 2d 443, 455 (E.D.N.Y. 2011) (citing <u>Patterson v. Cnty of Oneida, N.Y.</u> 375 F.3d

206, 229 (2d Cir. 2004).  A supervisor may be personally liable for a Section 1983 hostile-work-

environment claim where the supervisor "'was grossly negligent in supervising subordinates who

committed the wrongful acts.'"  <u>Campo v. City of N.Y.</u>, No. 19 Civ. 4364 (NGG) (SJB), 2022

WL 970730, at *16 (E.D.N.Y. Mar. 31, 2022) (citing <u>Provost v. City of Newburgh</u>, 262 F.3d 146,

154 (2d Cir. 2001)).  "The grossly negligent supervision standard "is satisfied where the plaintiff

establishes that the defendant-supervisor was aware of a subordinate's prior substantial

misconduct but failed to take appropriate action to prevent future similar misconduct before the

plaintiff was eventually injured."  <u>Raspardo</u>, 770 F.3d at 117.  "A supervisor is not grossly

negligent, however, where the plaintiff fails to demonstrate that the supervisor knew or should

have known of a problematic pattern of employee actions or where the supervisor took adequate

remedial steps immediately upon learning of the challenged conduct."  <u>Id.</u>

### a.  Ms. Vargas

Plaintiff states that Ms. Vargas treated her "differently than other non-Arab/Muslim

teachers."  ECF No. 29 ¶ 5.  Plaintiff supports this claim with several examples of Ms. Vargas's

allegedly discriminatory conduct towards her.  "For example, whenever Principal Parentini

would ask AP Vargas to assist [Plaintiff] or speak to [her] about something, [Ms. Vargas] would

yell at [Plaintiff] or speak to [her] in a very disrespectful tone."  <u>Id.</u>  "Beginning in the 2018-19

school year, AP Vargas began harassing [Plaintiff] with negative evaluations, excessive

classroom visits, assigning [her] PD to observe teachers" and to be coached.  ECF No. 29 ¶ 6.

"AP Vargas would yell at [Plaintiff] or disrespect [her] in front of other teachers," and excluded

Plaintiff from emails and faculty events.  <u>Id.</u> ¶¶ 9, 11, 18.  "Another example of AP Vargas

treating [Plaintiff] differently, was around September or October 2019, when AP Vargas directed

[Plaintiff's] 1:1 para to pull out every one of [Plaintiff's] class's binders for review." Id. ¶ 10. Plaintiff was the only teacher to whom Ms. Vargas did this "although other teachers were also late in preparing their class binders." Id. Ms. Vargas often spoke Spanish around Plaintiff, so Plaintiff could not understand what Ms. Vargas said to the other teachers. Id. ¶ 4. Ms. Vargas would "never include [Plaintiff] on emails to the third and fourth grade team about being evaluated by the state," id. ¶ 18, and Plaintiff received "an unjustified disciplinary letter" from Ms. Vargas alleging that Plaintiff was "not actively teaching" her students. Id. ¶ 16.

The Court finds that Plaintiff's new factual allegations sufficiently support a hostile-work-environment claim based on race and religion against Ms. Vargas under Section 1983. The higher federal standard requires that the misconduct be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (internal citations & quotation marks omitted). Plaintiff subjectively perceived her work environment as abusive, as she claims that Ms. Vargas yelled at her, disrespected her and harassed her based on Plaintiff's race and religion. See ECF No. 29 ¶¶ 5-6, 11. Applying the more liberal standard for pro se litigants, the Court finds that Plaintiff's claims show that Ms. Vargas's conduct permeated Plaintiff's workplace "with discriminatory intimidation, ridicule, and insult," Littlejohn, 795 F.3d at 320-21 (citations & internal quotation marks omitted), and that Ms. Vargas did so because of Plaintiff's Arab race and Muslim religion. See Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011).

The Court respectfully recommends that Individual Defendants' motion to dismiss Plaintiff's Section 1983 hostile-work-environment claim based on race and religion against Ms. Vargas be denied.

### b. Ms. Parentini

The Court finds that Plaintiff does not allege a hostile-work-environment claim against Ms. Parentini based on race and religion under Section 1983. Plaintiff's only claim against Ms. Parentini alleges that she received ineffective ratings on an observation conducted by Ms. Parentini on November 26, 2019. See ECF No. 29 ¶ 20. Aside from this claim, Plaintiff does not show that Ms. Parentini's conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment" or that Plaintiff perceived her environment to be abusive because of Ms. Parentini's discriminatory conduct. Alfano, 294 F.3d at 374 (internal citations & quotation marks omitted).

Plaintiff only alleged that she once complained to Ms. Parentini about the way Ms. Vargas treated Plaintiff. See id. ¶ 11. She makes a vague statement that "[Ms. Vargas and Ms. Parentini] were both aware of the impact their behavior was having on [her]." Id. ¶ 12. These statements about Ms. Parentini's knowledge of Ms. Vargas's conduct are insufficient to show that Ms. Parentini was "grossly negligent" in supervising Ms. Vargas. This is especially true when Plaintiff does not provide any information as to the substance of the complaint she made to Ms. Parentini.

The Court thus respectfully recommends that Individual Defendants' motion to dismiss Plaintiff's Section 1983 hostile-work-environment claim based on race and religion against Ms. Parentini be granted.

### 2. NYSHRL Hostile-work-environment Claim

"Until fairly recently, the standard applicable to hostile-work-environment claims brought pursuant to the NYSHRL mirrored the federal standard. But on October 11, 2019, amendments to the NYSHRL came into effect that eliminated the "severe and pervasive" standard." Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP, No. 21 Civ. 02512 (CM),

2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (citing N.Y. Exec. Law § 300). "The new standard requires a plaintiff [to] allege that they were subjected to 'inferior terms, conditions or privileges of employment because of the individual's membership in one or more . . . protected categories.'" Id. (citing N.Y. Exec. Law § 300). "This more lenient standard brings state law closer to the standard to establish a [hostile-work-environment] claim under the [NYCHRL], under which a plaintiff need only show that he was treated less well than other employees because of their protected class." Wheeler v. Praxair Surface Tech., Inc., No. 21 Civ. 1165 (PAE), 2023 WL 6282903, at *12 (S.D.N.Y. Sept. 26, 2023) (finding that "[t]he persistent derogatory comments about Black people made in Wheeler's presence by multiple PST personnel, including managers and Wheeler's team leader, clear[ed] this bar" because "much of commentary at issue overtly reference race"). "Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." Alvarado v. United Hospice, Inc., 631 F. Supp. 3d 89, 121 (S.D.N.Y. 2022) (applying this analysis to a hostile-work-environment claim under Title VII, Section 1981 and the NYSHRL) (citing Alfano, 294 F.3d at 374). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." Kirkland-Hudson, 665 F. Supp. 3d at 466 (internal citations & quotation marks omitted). "Improper, unfair, or false discipline can contribute to a hostile work environment" so long as "the disciplinary action was connected to Plaintiff's protected characteristics." Buczakowski v. Crouse Health Hosp., Inc., No. 18 Civ. 330, 2022 WL 356698, at *11 (N.D.N.Y. Feb. 7, 2022).

"The NYSHRL provides for individual liability for discriminatory practices under two

theories: (i) if the individual qualifies as the plaintiff's employer; or (ii) if the individual aided

and abetted the unlawful discriminatory acts of others covered by the NYSHRL." Whyte v.

N.Y.S. Police, No. 22 Civ. 5633, 2023 WL 7413087, at *12 (E.D.N.Y. Nov. 9, 2023) (internal

citations & quotation marks omitted); see Craven v. City of N.Y., No. 20 Civ. 8464, 2023 WL

3097434, at *10 (S.D.N.Y. Apr. 26, 2023) ("The NYSHRL permits individual liability for

discrimination, but only if the individual qualifies as an 'employer' or 'aided and abetted the

unlawful discriminatory acts of others.'") (citing Xiang v. Eagle Enters., LLC, No. 19 Civ. 1752

(PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020)).

### a.   NYSHRL Hostile-work-environment Claim Based On Race And Religion

#### i.   Ms. Vargas

Because the NYSHRL's standard is more liberal than under Section 1983, the Court finds

that Plaintiff's Amended Complaint sufficiently alleges a hostile-work-environment claim based

on race and religion against Ms. Vargas under the NYSHRL.  The Court respectfully

recommends that Individual Defendants' motion to dismiss Plaintiff's hostile-work-environment

claim based on race and religion against Ms. Vargas under the NYSHRL be denied.

#### ii.   Ms. Parentini

Even under New York state's more lenient standard and applying the more liberal

standard for pro se litigants, the Court finds that Plaintiff fails to allege a hostile-work-

environment claim against Ms. Parentini under the NYSHRL.  Plaintiff does not allege that Ms.

Parentini treated her "less well than other employees because of" Plaintiff's race or religion.

Wheeler, 2023 WL 6282903, at *12.  As stated above, Plaintiff only states that she received

ineffective ratings on an observation conducted by Ms. Parentini on November 26, 2019.  See

ECF No. 29 ¶ 20.  Plaintiff also fails to show that Ms. Parentini "aided and abetted the unlawful

discriminatory acts of" Ms. Vargas.  Whyte, 2023 WL 7413087, at *12.  Plaintiff claims that Ms.

Vargas treated her "differently than other non-Arab/Muslim teachers," id. ¶ 5, but she does not make that allegation against Ms. Parentini.

The Court thus respectfully recommends that Individual Defendants' motion to dismiss Plaintiff's hostile-work-environment claim based on race and religion against Ms. Parentini under the NYSHRL be granted.

### b.  NYSHRL Hostile-work-environment Claim Based On Disability

The Court finds that the Amended Complaint does not show that Individual Defendants treated Plaintiff "less well" than other teacher because of Plaintiff's disability.

Plaintiff believes Individual Defendants were both aware of the impact their behavior had on Plaintiff, see ECF No. 29 ¶ 12, but Plaintiff's pleadings do not allege that Individual Defendants knew of Plaintiff's disability or perceived her to have a disability at the time of the occurrences that Plaintiff describes.  For example, Plaintiff was "diagnosed with stress-related anxiety based on [her] job and also PTSD."  Id. ¶ 19.  Plaintiff alleges that she complained to Ms. Parentini after Ms. Vargas yelled at Plaintiff in front of other teachers, which exacerbated Plaintiff's anxiety and caused Plaintiff to suffer "from chest pain and dizziness."  Id. ¶ 11.  On November 11, 2019, Plaintiff suffered an anxiety attack because of Ms. Vargas's "continuous harassment."  Id. ¶ 17.  Plaintiff does not allege that Individual Defendants took actions against Plaintiff because of her disability.

Plaintiff also fails to provide any allegations of how Individual Defendants treated nondisabled teachers or teachers with disabilities other than anxiety, such that it is impossible for this Court to find that Plaintiff has alleged that she was treated "less well" because of her disability.

Even applying the more lenient pro se standard, the Court finds that Plaintiff has not sufficiently alleged a hostile-work-environment claim against Individual Defendants under the

NYSHRL based on Plaintiff's disability.  The Court respectfully recommends that Individual Defendants' motion to dismiss Plaintiff's NYSHRL hostile-work-environment claims based on disability be granted.

### 3. NYCHRL Hostile-work-environment Claim

"The NYCHRL provides a broader basis for direct individual liability than the NYSHRL," in that it provides for individual liability of an employee "regardless of ownership or decisionmaking power." Livingston v. City of N.Y., 563 F. Supp. 3d 201, 256 (S.D.N.Y. 2021) (applying the NYCHRL individual-liability standard to a hostile-work-environment claim).

For the reasons stated above, the Court respectfully recommends that Individual Defendants' motion to dismiss Plaintiff's NYCHRL hostile-work-environment claims based on race and religion be denied as to Ms. Vargas and granted as to Ms. Parentini, and that the motion to dismiss be granted as to Plaintiff's NYCHRL hostile-work-environment claims based on her disability against Individual Defendants.

### D. Retaliation

Plaintiff claims that she was retaliated against for filing the present lawsuit when she was denied a position at P.S.1 on or about October 1, 2020 because she was "flagged" in the system. See ECF No. 29 ¶ 27.

### 1. Section 1983 Relation Claim

"[F]or a retaliation claim under § 1983 to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." Vega, 801 F.3d at 91 (internal citations & quotation marks omitted).

On or about September 30, 2020, Plaintiff was "nominated for a position at PS 1 in Brooklyn for an elementary school teaching position, but was . . . flagged on or about October 1,

23

2020, and the nomination did not go through." Id. ¶ 27.  Plaintiff does not allege that while she was employed, she made any complaints with reference to any protected status.  On January 26, 2021, Plaintiff filed her EEOC charge against Individual Defendants and the DOE, see ECF No. 29 at 6, and filed the present lawsuit on October 1, 2021.  See ECF No. 2.

The Court finds that Plaintiff's retaliation claim fails under Section 1983 because Individual Defendants did not take an adverse employment action against Plaintiff after she complained of discrimination.

### 2.  NYSHRL Retaliation Claim

"Retaliation claims under . . .  § 1983, and the NYSHRL are subject to the same standard." Kirkland-Hudson, 665 F. Supp. 3d at 458.  A prima facie claim for retaliation under the NYSHRL requires that a plaintiff establish "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Littlejohn, 795 F.3d at 316.  "[A]t the pleading stage, a plaintiff must only allege facts that provide plausible support to the prima facie requirements." Wu v. Good Samaritan Hosp. Med. Ctr., 815 F. App'x 575, 581 (2d Cir. 2020).  "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Wright v. Monroe Cmty. Hosp., 493 F. App'x 233, 236 (2d Cir. 2012) (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)).  Under the NYSHRL, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Kirkland-Hudson, 665 F. Supp. 3d at 459 (citing Vega, 801 F.3d 72, 90 (2d Cir. 2015)).  "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action"; instead, it requires only that absent the retaliatory motive, the adverse action would not have occurred." Duplan, 888 F.3d at 625 (quoting Vega, 801 F.3d at 90-91).

For the same reasons stated above, the Court finds that Plaintiff's retaliation claim against Individual Defendants fails under the NYCHRL because Individual Defendants did not take an adverse employment action against Plaintiff after she complained of any discrimination.

**3. NYCHRL Retaliation Claim**

The "retaliation inquiry under the CHRL is broader" than under the NYSHRL. Rozenfeld v. Dep't of Design & Const. of City of New York, 875 F. Supp. 2d 189, 208 (E.D.N.Y. 2012), aff'd, 522 F. App'x 46 (2d Cir. 2013) (quoting Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010)). "[R]ather than requiring a plaintiff to show an adverse employment action, it only requires him to show that something happened that was reasonably likely to deter a person from engaging in protected activity." Id. (internal quotation marks omitted).

Plaintiff's NYCHRL retaliation claim fails for the same reason as her NYSHRL retaliation claim.

**III. Conclusion**

For the foregoing reasons, it is respectfully recommended that Individual Defendants' Motion to Dismiss be (1) denied as to Plaintiff's race discrimination claims under Section 1983, the NYSHRL and the NYCHRL in Individual Defendants' personal capacity; (2) granted as to Plaintiff's religious and disability discrimination claims under Section 1983, the NYSHRL and the NYCHRL in Individual Defendants' personal capacity; (3) denied as to Plaintiff's hostile-work-environment claim based on race and religion against Ms. Vargas under Section 1983 in her personal capacity; (4) granted as to Plaintiff's hostile-work-environment claim based on race and religion against Ms. Parentini under Section 1983 in her personal capacity; (5) denied as to Plaintiff's hostile-work-environment claim based on race and religion against Ms. Vargas under the NYSHRL and the NYCHRL; (6) granted as to Plaintiff's hostile-work-environment claim

based on race and religion against Ms. Parentini under Section 1983, the NYSHRL and the NYCHRL; (7) granted as to Plaintiff's hostile-work-environment claim based on disability under the NYSHRL and the NYCHRL; (8) granted as to Plaintiff's retaliation claims under Section 1983, the NYSHRL and the NYCHRL; (9) granted as to Individual Defendants' official capacity as to all Section 1983 claims; and (10) granted as to tenure by estoppel.

## IV.    Objections

This report and recommendation will be filed electronically and will be mailed to Sheren Jadallah, 68 Gelston Ave., Brooklyn, NY 11209. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate [judge]'s recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
        March 28, 2024


                                                    *Vera M. Scanlon*
                                        _____
                                                VERA M. SCANLON
                                            United States Magistrate Judge

26